## WILLIAM J. APPLEGARTH *vs.* CHARLES H. CARTER ET AL.

*Elections and Voters—Constructive Service of Summons Upon Voter Suspected to be Disqualified.*

The house given upon the registry as the place of residence of a voter was destroyed by fire.  His name was noted as that of a person suspected to be disqualified, and a summons was served by being deposited upon the vacant lot where this house formerly stood.  *Held*, that this was a proper notice under Code, Art. 33, sec. 24, requiring summons in such cases to be served at the voter's place of residence given in the registry.

Appeal from the Court of Common Pleas (SHARP, J.)

The cause was argued before McSHERRY, C. J., PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Lewis Putzel* and *Jas. E. Godwin*, for the appellant.

*Charles H. Carter*, for the appellees.

PEARCE, J., delivered the opinion of the Court.

This case was argued with the preceding case of *Carter et al. v. Applegarth*, and a *per curiam* opinion was filed in this case also, November 3rd, 1905, affirming the order of the Court of Common Pleas, refusing to strike the name of Charles R. Betts from the list of qualified voters in the 15th Precinct of the 4th Ward of Baltimore City, though our reasons were different from those which controlled the lower Court.

Charles R. Betts was duly registered in that precinct as residing at 39 Market Space, which was within the Burnt District, and the building from which he was registered was among those destroyed in the great fire, and no building has since been erected upon the site. His name was placed upon the same suspected list mentioned in the preceding case, and the ground of suspecting his disqualification, as stated on that list, was that there was no building at 39 Market Space. We have detailed in the preceding case all the circumstances attending the making and handing in of this list and they need not be repeated here. The summons issued for Betts upon the filing of Applegarth's petition to strike him from the list was returned by the Sheriff, "*Non est*—summons left on premises," and the notice mailed to Bett's address by the registers was returned to them through the mail undelivered.

The deputy Sheriff to whom the summons was delivered to be served, testified that he went to the street where 39 Market Space stood before the fire, and found it to be a vacant lot, as were also Nos. 37 and 41 on either side of No. 39; that he had a map and plat of that part of the city; that he measured the distances according to this map and plat, and it was agreed by counsel that in that way he properly located and ascertained Lot No. 39 Market Space; and having so located said lot, he took the summons and laid it on the lot and put a half brick upon it.

JUDGE SHARP held this insufficient service and therefore refused to strike him off, though holding as stated in the preceding case that the suspected list was such a list as justified

action by the registers. As we held in the former case this list was not a proper list, we necessarily affirmed the order of JUDGE SHARP in this case, though we held the service of the summons to be sufficient.

Upon first presentation it might seem that this was to push the idea of constructive notice beyond reason, and to render it as expressed by the lower Court, "a proceeding little short of grotesque;" but we think this view will readily yield to a careful consideration of the circumstances of the case and the purpose and object of the law. If the law had required that the summons should be served by leaving it at his residence, his *actual residence*, a different situation would have existed; but the requirement is that it be served "at his *place* of residence given in the registry." It is true it was no longer his actual residence, but it still continued to be "his place of residence given in the registry." If there had been no fire destroying the building, and he had removed to another location unknown to the registers, no one we think could doubt that service would have been good, if left with the occupant of the building, or if tacked upon the door if there were no occupant. If the house were destroyed, and a tree, or a post were left standing, and the summons was tacked thereon, that would be service by leaving it on the premises, as is done in cases of notice of taxes in arrears. Voters are presumed to know the law regulating the exercise of the right of suffrage, and therefore to know that in event of an attempt to strike one from the list, notice was required to be left at "the place of residence given in the registry," and though the *residence* be destroyed, he may be properly required to resort to the *place* of the destroyed residence, for the purpose of ascertaining if notice has been left there, if he desires to protect his right of suffrage. And it is no answer to say that there is no precedent for such service as was made in this case. Unusual situations require unusual procedure to meet them, and the action of the Sheriff was in accord with the mandate of the law in this case. If Betts, when he removed after the fire to another place of residence had communicated this to the registers, it is fair to

presume that a notice would have been sent to him at that address, though not required by law.

For the reasons we have stated we are of opinion that the service contemplated by the law has been made in this case. (Filed December 6th, 1905.)